IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PETER R. TIA, #A1013142, | ) CIV. NO. 13-00157 LEK/KSC |
| Plaintiff, | ) |
| vs. | ) ORDER DISMISSING COMPLAINT |
| | ) PURSUANT TO 28 U.S.C. §§ 1915A |
| DEPUTY ATTORNEY GENERAL | ) & 1915 |
| SUZUKI, et al., | ) |
| Defendants. | ) |

**ORDER DISMISSING COMPLAINT**
**PURSUANT TO 28 U.S.C. §§ 1915A & 1915**

On April 2, 2013, Plaintiff, a prisoner incarcerated at the Halawa Correctional Facility ("HCF"), commenced file this *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. On April 11, 2013, Plaintiff filed a supplemental complaint adding two additional claims. Plaintiff complains, *inter alia*, that Defendants[1] violated his constitutional rights by perpetrating fraud on the court, conspiring to cover up this fraud, seeking to forcibly medicate him, and denying him access to the court.

---

[1] Plaintiff names twenty-eight Defendants: Hawaii Attorney General David Louie and Deputy Attorney General Russell A. Suzuki; Office of the Ombudsman employees Robin K. Matsunaga, Ganson Li, Marcie McWayne, and Rene Dela Cruz; HCF Medical Staff Dr. Steven DeWitt, Mary Tumminello, and Nurse Heather Doe; HCF Kitchen Staff Supv. Alfredo Doe, Santiago-Lopez, and "Dietician Does;" HCF Special Housing Adult Correctional Officers (ACOs) Sergeant Henry Hope, Sgt. Kaiser, Sgt. Amerino, Casey K. Lau, Ray Fonoti, Guevarra, Michael Gribbin, and Captain Paleka; HCF Unit Manager Dovie Borges; HCF Mental Health Social Workers Tom Doe, Jason Akasaki, and Dr. Sheila Wendler; HCF Warden Nolan Espinda, Deputy Warden Eric Tanaka, Chief of Security Lyle Antonio, and Healthcare Administrator Wesley Munn.

Plaintiff seeks declaratory judgment, compensatory and punitive damages.

Plaintiff's Complaint and supplement are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2). Plaintiff is given leave to amend, as discussed and limited below.

## I.  LEGAL STANDARD

The court must screen all civil actions brought by prisoners relating to prison conditions and/or seeking redress from a governmental entity, officer, or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if its claims are legally frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1).

A complaint may be dismissed for failure to state a claim if it (1) lacks a cognizable legal theory; or (2) contains insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The court must construe a *pro se* complaint liberally, accept all allegations of material fact as true, and construe those facts in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 611 F.3d 1202, 1205 (9th Cir. 2010) (stating that "we continue to construe pro se filings liberally"). Leave to amend should be granted unless it appears that amendment is futile. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## II. **PLAINTIFF'S CLAIMS**

Plaintiff's claims are rambling and exceedingly difficult to decipher. Plaintiff says that he is at least 5'11" tall, possibly 6', and that, as of March 2013, he weighs 156 pounds. He asserts that the National Institutes of Health

("NIH") weight and body mass index ("BMI") standards show that a person his height should weigh at least 179 pounds, and that his ideal weight is 215 pounds. Plaintiff believes that he is therefore underweight and requires an enhanced calorie diet.

Plaintiff primarily alleges that Defendant Dr. DeWitt[2] fraudulently misrepresented the NIH's weight and BMI standards at a hearing held on February 13, 2012, in *Tia v. Paderes*, Civ. No. 11-00459 LEK. *See* Compl., (Count I), ECF No. 1 PageID #2. He further alleges that: (1) certain Defendants are conspiring to cover up Dr. DeWitt's "fraud" and deprive him of adequate nutrition (Counts II, III, IV, V, VII);[3] (2) Defendant Tumminello told him that his spitting up blood, which he alleges is due to inadequate nutrition, is not a medical but a facility issue (Count II); (3) certain Defendants sought a court order to forcibly medicate him, but withdrew their request on or about March 20, 2013 (Count V, VI);[4] (4) certain Defendants conspired

---

[2] Although Plaintiff apparently disputes this, the Honolulu Star Advertiser reported that Dr. DeWitt died on December 26, 2012. *See* http://obits.staradvertiser.com/2013/01/06 (last visited April 8, 2013).

[3] Plaintiff names Defendants Tumminello, Heather, Hope, Kaiser, Amerino, Matsunaga, McWayne, Delacruz, Espinda, Borges, Hope, Guevarra, Case, Mun, Santiago-Lopez, Fonoti, Gribben, Lau, Alfredo, and Antonio as liable for this claim.

[4] Plaintiff names Defendants Akasaki, Dr. Wendler, Tom Doe, and the Hawaii Department of Public Safety (DPS) as liable for these claims. Plaintiff suggests that Attorney General Louie and Deputy Attorney General Suzuki are also liable.

with the federal court in Civ. Nos. 12-00324 JMS, and 12-00473 LEK to obstruct justice regarding his claims that they mishandled his mail (Count V);[5] (5) certain Defendants failed to timely respond to or denied his grievances (Count IV, VII);[6] and (6) certain Defendants violated his right to due process and access to the court because (a) the prison's grievance forms contain carbon copy pages, (b) he must request copies of documents from the law library (but fears that prison officials may then steal his documents or see his claims), and (c) they denied him highlighter pens and "white out" fluid (Counts VII, VIII, IX, X). The Complaint and supplement may contain other claims that are not readily evident.

### III. DISCUSSION

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 129 S. Ct. 2431 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

---

[5] Plaintiff names Defendants Fonoti, Gribben, Lau, Antonio, Espinda, Borges as liable for this claim.

[6] Plaintiff names Defendants Espinda, Mun, Borges as liable for this claim.

**A.   Count I: Fraud**

Whether Plaintiff is seeking reconsideration of the Order dismissing Civ. No. 11-00459 LEK under Fed. R. Civ. P. 60(b)(3), based on Dr. DeWitt's alleged fraud, or is alleging a state law fraud claim, Plaintiff's claim is meritless.  At the February 13, 2012, hearing in *Tia v. Paderes*, Civ. No. 11-00459 LEK, and in his declaration in that action, Dr. DeWitt stated that Plaintiff was 5'11" tall and weighed 163.4 pounds.  Dr. DeWitt explained that the NIH's weight standards for a 5'11" person of healthy weight is between 133 and 178.5 pounds. Dr. DeWitt opined that Plaintiff's weight was a "perfectly reasonable weight for a man his height."  *Id.*, DeWitt Decl. ECF No. 38-1 PageID #180.  Plaintiff claims that Dr. DeWitt misrepresented the NIH standards, perpetrating fraud on the court and perjuring himself.[7]

The current NIH weight standards for a 5'11" person is between 133 and 178.5 pounds, representing a BMI of 18.5-24.9.[8] An online review of other weight and BMI calculators track the

---

[7] At that hearing, the court received extensive evidence regarding Plaintiff's diet and weight and thereafter denied Plaintiff's motion for a temporary restraining order providing him with an enhanced calorie diet.  *See* Civ. No. 11-00459 LEK, ECF No. 42.  The case was later dismissed for Plaintiff's failure to exhaust his administrative remedies.  *Id.*, ECF No. 156.

[8] *See* http://www.nhlbi.nih.gov/guidelines/obesity/bmi_tbl.

NIH standards.[9] Dr. DeWitt did not misrepresent these standards or Plaintiff's height and weight, or incorrectly apply the standards to Plaintiff. Plaintiff admits he was 163.5 pounds during the February 13, 2012 hearing, which is well within the NIH normal weight and BMI index. Moreover, Plaintiff's current weight of 156 pounds remains within the NIH's normal weight and BMI standards. If Plaintiff weighed 179 pounds, or succeeded to his "goal" weight of 215 pounds, he would be considered overweight or obese under the NIH's and other weight/BMI standards. *Id.*

Dr. DeWitt did not commit fraud or perjury at the February 13, 2012 hearing. Moreover, the court did not rely on Dr. DeWitt's statements when it dismissed Civ. No. 11-00459 LEK for Plaintiff's failure to exhaust administrative remedies. Thus, reconsideration of that decision is DENIED. Finally, Plaintiff fails to state a state law fraud stemming from Dr. DeWitt's statement because cannot show substantial actual damages. *See Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours*, 116 Hawai'i 277, 292, 172 P.3d 1021, 1036 (Haw. 2007) (stating "in a fraud case, 'the plaintiff must have suffered substantial actual damage, not nominal or speculative

---

[9] *See e.g.*, Centers for Disease Control bmi calculator at: http://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html.

[damages]'") (citations omitted). Count I is DISMISSED for Plaintiff's failure to state a claim.

**B.   Conspiracy: Counts II, II, IV, V, VII**

A conspiracy claim under § 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001) (quoting *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and "'an actual deprivation of constitutional rights,'" *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward Cnty., Okla.*, 866 F.2d 1121, 1126 (9th Cir. 1989)). Vague and conclusory allegations with no supporting factual averments are insufficient to support a conspiracy claim under § 1983. *Woodrum*, 866 F.2d at 1126; *Aldabe v. Aldabe*, 616 F.2d 1089, 1090 (9th Cir. 1980).

Dr. DeWitt did not commit fraud or perjury regarding Plaintiff's weight and the NIH standards. Under NIH standards, which are generally accepted by the medical community, Plaintiff is not underweight. *See* Civ. No. 11-00459 LEK, DeWitt Decl., ECF No. 38-1 PageID #179-181. Defendants, therefore did not conspire to "cover up" Dr. DeWitt's alleged fraud and perjury, or to deny him adequate nutrition because he is not entitled to an enhanced calorie diet. Plaintiff's claim that he is underweight pursuant to NIH standards is delusional and he cannot show a

8

constitutional deprivation sufficient to support his conspiracy claims. Plaintiff's conspiracy claims in Counts II, III, IV, V, and VII, concerning and Defendants' alleged conspiracy to cover up Dr. DeWitt's alleged fraud and to deny him adequate nutrition are DISMISSED for failure to state a claim.

**C.    Count II: Defendant Tumminello**

In Count II, Plaintiff vaguely says that Tumminello "responded to Plaintiff's spitting up blood due to lack of nutrition as a facility not a medical issue and stated Plaintiff doesn't qualify for extra food." Comp., ECF No. 1 PageID #3. To the extent Plaintiff alleges Tumminello said this in furtherance of a conspiracy, as suggested by his other statements in this claim, he fails to state a claim. Plaintiff may, however, be attempting to allege an Eighth Amendment claim against Tumminello.

Prison officials must provide inmates adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state a constitutional violation for the denial or delay of medical care, a prisoner must allege that: (1) the deprivation was objectively sufficiently serious, and (2) the prison official acted with a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834. With respect to the subjective prong, the state of mind is one of deliberate indifference to inmate health or safety. *Id.* Prison officials must be aware of facts

9

from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw that inference. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).  Prison officials act with deliberate indifference to a prisoner's serious medical needs when they "deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

Plaintiff's conclusory statement regarding Defendant Tumminello fails to provide sufficient facts to satisfy Rule 8.  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

Plaintiff does not explain the context for Tumminello's alleged statements.  It is unclear whether he requested medical care for spitting up blood and was denied, or was treated but told that his condition was not due to inadequate nutrition or lack of an enhanced diet.  As it stands, Plaintiff's allegation

against Tumminello is not consistent with a constitutional claim. He provides no background from which the court can infer that Tumminello acted with deliberate indifference to his health, other than his faulty claims that she was conspiring to cover up Dr. DeWitt's fraud and deny him an enhanced calorie diet.

The court must assess whether there are other "more likely explanations" for Tumminello's statement. *Iqbal*, 556 U.S. at 680. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — "that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)). Plaintiff fails to state a claim against Tumminello for the denial or delay of medical care and this claim is DISMISSED.

**D.   Counts V, VI: Forcible Medication**

Prison officials may forcibly treat a mentally ill inmate with anti-psychotic drugs "if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Washington v. Harper*, 494 U.S. 210, 227 (1990); *Sell v. United States*, 539 U.S. 166, 180-81 (2003) (adopting a more restrictive standard for medicating a defendant facing trial than *Harper's* standard for medicating a convicted inmate to render him non-dangerous); *United States v. Loughner*, 672 F.3d 731, 745 (9th Cir. 2012). Such forcible medication must be "'reasonably

related to legitimate penological interests.'" *Harper*, 494 U.S. at 223 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Plaintiff provides few details regarding this claim. Its context suggests that he believed Defendants Akasaki, Wendler, Tom Doe, DPS, Louie, and Suzuki conspired to have him forcibly medicated to cover up Dr. DeWitt's alleged fraud. Plaintiff unequivocally states, however, that Defendants withdrew their state court motion to forcibly medicate him on March 20, 2013. *See* Compl., ECF No. 1 PageID #8. Consequently, Plaintiff was not forcibly medicated and therefore fails to state a claim. Counts V and VI, to the extent they allege Defendants violated his constitutional rights by forcibly medicating him, are DISMISSED.

**E.   Count V: Conspiracy to Obstruct Justice**

Civil No. 12-00324 JMS was dismissed without prejudice on July 3, 2012, pursuant to 28 U.S.C. § 1915(g), because Plaintiff had accrued three strikes, failed to allege imminent danger of serious physical injury, and failed to concurrently pay the civil filing fee. *See* ECF No. 6. Civil No. 12-00473 LEK was dismissed for the same reason on August 27, 2012. *See* ECF No. 4.

Plaintiff fails to allege any facts that plausibly suggest an agreement or meeting of the minds between Defendants and the court regarding these cases. See *Franklin,* 312 F.3d at 441. Nor can he allege an actual deprivation of a constitutional

right stemming from the dismissal of these cases, because the record is clear that they were subject to dismissal under § 1915(g), for his failure to concurrently pay the filing fee. *See Hart,* 450 F.3d at 1071 (requiring an actual deprivation of constitutional rights to prove conspiracy). Plaintiff's vague, conclusory, and largely incoherent allegations regarding this alleged conspiracy, with no supporting facts, are insufficient to support a conspiracy claim under § 1983. *See Woodrum*, 866 F.2d at 1126. To the extent Plaintiff suggests that certain Defendants conspired with this court to obstruct justice in Civ. Nos. 12-00324 JMS and 12-00473 LEK, he fails to state a claim and this claim is DISMISSED.

**F.   Count IV, VII, VIII: Grievance Claims**

Plaintiff alleges that Defendants Espinda, Borges, and Mun violated his rights when they denied or failed to respond to his grievances. Plaintiff also alleges that HCF's grievance procedures violates his constitutional rights by requiring him to provide the attached carbon copies of his grievances to prison officials when he files his grievances.

Whether Defendants refused to process Plaintiff's grievances, lost them, denied them, or required a specific procedure to exhaust them, is an insufficient basis on which to state a claim. *See, e.g.*, *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective grievance or appeal procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Apple v. Glenn*, 183

F.3d 477, 479 (6th Cir. 1999) (holding a prison grievance procedure is a right of expression only and "does not guarantee a response . . . or the right to compel government officials to act on" it); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (same).

That is, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [underlying] violation." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that a prison official whose only role involved the denial of a grievance cannot be held liable under § 1983); *Wright v. Shapirshteyn*, No. CV 1-06-0927-MHM, 2009 WL 361951, *3 (E.D. Cal. Feb. 12, 2009) (same); *Velasquez v. Barrios*, No. 07cv1130-LAB (CAB), 2008 WL 4078766, *11 (S.D. Cal. Aug. 29, 2008) (same). Plaintiff's claims that Defendants mishandled his grievances and that the DPS PPMs are unconstitutional fail to state a claim and are DISMISSED.

**G.   Counts IX, X:  Denial of Access to the Court and Due Process**

Plaintiff believes that prison officials look at or steal his legal documents when he leaves his cell. He has alleged this claim numerous times in many of his previous cases. As a result of this, Plaintiff fears to attend the law library or to have his documents sent to the library to be copied. Plaintiff claims that Defendants have also denied him highlighters, corrective fluid, and adequate amounts of

stationery.  Plaintiff alleges this denies him due process and access to the court.  These claims are frivolous.

An inmate has a constitutionally protected right of meaningful access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 820–821 (1977).  This right encompasses more than access to an adequate law library: it includes access to "paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them."  *Id.* at 824–25.  To prevail, however, it is not enough for an inmate to show some sort of denial; he must also show "actual injury" from the denial or delay of services.  The Supreme Court has described the actual injury requirement as follows:

> [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Plaintiff does not require highlighters or corrective fluid to present his claims to the court or to submit his grievances.  Moreover, the court has explained to Plaintiff many times that if he refuses to allow the prison to copy his documents, he may hand copy them.  *See e.g., Tia v. Paderes*, Civ.

No. 11-00459 LEK, ECF Nos. 46 (Order denying motion for stationery and legal service) and 119 (Order denying motion for copies). Plaintiff has filed many, many actions in this court, with their attendant complaints, *in forma pauperis* requests, and numerous motions, requests, declarations, notices, and letters submitted in each. *See generally*, *id.* Plaintiff has adequately communicated his claims to the court and has not been hampered by the denial of highlighters, corrective fluid, additional stationery, and copies. Counts IX and X are DISMISSED for failure to state a claim.

### IV.    **LEAVE TO AMEND**

Plaintiff's Complaint is DISMISSED for failure to state a claim. Plaintiff may file a proposed amended complaint on or before **May 10, 2013,** curing the deficiencies noted above, if possible. The amended complaint must contain short, plain statements explaining each Defendant's involvement in Plaintiff's claims and specific facts supporting a finding that Defendants violated his constitutional rights.

The proposed amended complaint must clearly designate that it is the "First Amended Complaint." It must be retyped or rewritten in its entirety on court-approved forms and may not incorporate any part of the original Complaint by reference. *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992). Any cause of action that was raised in the original complaint is waived if it is not raised in an amended complaint. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

## V.  28 U.S.C. § 1915(g)

If Plaintiff fails to file an amended complaint correcting the deficiencies identified in this Order, this dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).  Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  CONCLUSION

1.  The Complaint is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

2.  Plaintiff may file an amended complaint on or before **May 10, 2013**.  If Plaintiff fails to timely amend the Complaint or cure the deficiencies noted in this order, this action will be AUTOMATICALLY DISMISSED, without further notice and the Clerk SHALL enter judgment stating that the dismissal was made pursuant to 28 U.S.C. § 1915.

3.  The Clerk of Court is DIRECTED to forward a copy of the court's prisoner civil rights complaint and instructions to Plaintiff so that he may comply with this Order.

4. Plaintiff's Motion to amend the complaint is GRANTED and Counts IX and X in the supplement are considered as part of the original Complaint.

5. Plaintiff's Motion to compel the filing of his temporary restraining order is DENIED. The Motion for Temporary Restraining Order was filed on April 2, and denied on April 9, 2013. ECF Nos. 4 and 6.

6. All other pending motions are DENIED. Plaintiff is NOTIFIED that he may not file, and the court will take no action, on any motions he files until he has submitted a sufficient amended complaint that cures the deficiencies noted in the original Complaint.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 12, 2013.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

*Tia v. Suzuki*, 1:13-cv-00157 LEK/KSC;G:\docs\prose attys\Scrng\DMP\2013\Tia 13-157 lek (NIHstds).wpd